Dissent of
Chief Justice Bibb.
Not concurring with the majority of the county, in subjecting the aliences of the fraudulent debtor, in personam, for the money received by them before suit, for their sales of the property.
I accord with the principles and decree contained in the opinion of the majority of the court, so far as the deeds and conveyances are declared fraudulent, but so far as John and Henry Halbert, are made personally responsible for sums supposed to have been received before suit, I dissent.
My opinion is, that the decree should be against Isaac, the debtor, for the amount due on the contract with the complainant, which is annulled and set aside as fraudulent; against John and Henry, that the deeds and incumbrances, obtained by them in fraud of Isaac’s creditors, should be set aside, and the specific property subjected to the payment of the debts of Isaac Halbert. In raising an account against Henry and John, in favour of Isaac, for monies received, and in decreeing that account in favour of the complainant, for property sold, or monies received before the institution of this suit. I think the opinion of the court proceeds farther than is warranted by the usages or principles of equity.
Agreed that money in transitu may be subjected.
Not monies received for sales by debtor’s alience before suit.
That equity will remove all impediments and obstructions fraudulently thrown in the way, to delay or hinder creditors, that it will attach the property of the debtor, and even the funds arising out of the fraudulent shifts and devices, whilst those funds are in transitu, I readily grant. But this decree goes farther; it looks behind the suit, and decrees money not in transitu, it looks to monies received by John and Henry, before suit brought; and decrees the payment thereof, to the Complainant.
As to those monies so received by John and Henry, for the proceeds of the property conveyed to them by Isaac Halbert, the law would raise.no promise on the part of John and Henry or either, to pa# them to Isaac; nor would equity assist Isaac Halbert, to recover such monies of Henry and John. As between these three parties, the law considers the sales and alienations as binding; and equity would relieve neither of them. No debt or duty is created in law or equity from John and Henry Halbert, to Isaac Halbert, to pay over to him, those monies or any part of them There is no privity of contract between the complainant and John and Henry Halbert, as to those monies; the complainant had no lien on the property until he exhibited his bill, and his suit gave him a lien inequity, upon the estate of Isaac Halbert either in his own possession, or in possession of any one of the defendants who were parties to the fraud. Alienations made, before suit, by any of the parties to the fraud, to a purchaser bona fide, put the property beyond the reach of the chancellor. The complainant had acquired no lien on that property, and the debtor, Isaac Halbert, had no claim himself upon the proceeds. No promise arose from John and Henry, or either to the complainant. Upon what then does the chancellor act? He seizes no property. That is gone. By the sloth of the creditor, or the swiftness of the holders of the property, that has escaped the grasp of the chancellor. What then does he act upon? What does he grasp? A shadow. He is pursuing and catching at no visible, tangible thing; neither goods, nor debts, nor secureties, nor documents for debts. To take an account of these sums, and de *593 cree them to the plaintiff, the chancellor must raise a promise, in defiance of law, create a debt against law, and extend his powers and remedies, the settled usages of equity, and beyond the rules of law.
Bill was not maintainable against the debtor of the debtor—until
—Statute of 1821, which subject’s choses in action.
Objection to the decree as creating the debt on the debtor’s alienee for the creditor.
Agreed that debts &c may be acted on as they before existed.
*593 As early as 1744, in the case of Bradley, Hardwicke’s Reports in Chancery, 194, and Mills vs. Wills, same, 285, it was settled that a bill will not lie against the debtor of a debtor, and so the rule has been ever since.
The statute of Kentucky (made since the institution of this suit,) in aid of creditors, whose executions are returned, no estate, 1 Dig. 505; does not go as far as is now proposed. That statute authorizes the chancellor to subject “any choses in action, belonging to the debtor, and also any equitable or legal interest in any estate, real, personal or mixed, which the debtor may be entitled to.” This statute is known to be a new source of jurisdiction given to the chancellor.
But in this case, and by that part of the decree from which I dissent, no chose in action belonging to the debtor, “no legal or equitable interest in any estate, real, personal or mixed, which the debt- or is entitled to,” is pursued or seized or attached; no specific thing, or document, or evidence of debt, is arrested or stopt in transitu. But on the contrary, that which the debtor has no claim to in law or in equity, is first raised up, as upon an account for money had and received to the use of Isaac Halbert, when neither law nor equity raises such an assumpsit, and then that created assumpsit, coined by the chancellor, is to be decreed, and set over to the plaintiff. In fact the chancellor to effectuate this part of the decree, must make an entity, out of a non-entity; John and Henry Halbert, who owe Isaac Halbert nothing, are forced into the attitude of his debtors, and without any promise or agreement, they are transferred as debtors, to pay the debt of Isaac Halbert, to the complainants.
In givihg effect to the doctrines of the common law, and statutes for the suppresion of frauds, I accord most willingly in affording the most effica *594 cions remedy in behalf of creditors against the estate, effects, debts and documents of debts of a fraudulent debtor. So long as file chancellor acts upon the estate, or specific properly, aliened in fraud, or upon documents of debts, or money arising the reform, arrested in transitu, and applies these in satisfaction of creditors, he is acting in safety. But when he extends his powers and researches farther, and makes his decree to act personally upon one, who is not the debtor, but the alienee of the debtor, by raising an account for monies, as if had and received to the use of the debtor, and therefore to the use of the creditor, it seems tome, that he is charging one man to answer for the debt, default or miscarriage of another person,” without any special promise or agreement whatever, verbal or written. I do not understand the adjudged cases cited by the court, as going so far.
Chancellor Kent.
Statute of frauds and perjuries referred to.
Crittenden, for plaintiff; Triplett, for defendant.
For the genius and acquirements of chancellor Kent, I am free to acknowledge my veneration. They have acquired for him, a just and lofty reputation as a common lawyer; and as a chancellor, he has raised for himself a monument of fame. I look to his decisions for information. He never fails to throw ablaze of light upon every subject which he discusses. But I do not understand his decisions as having travelled so far, as is proposed by that part of the opinion and decree from which I dissent.
I am not willing to advance into a new, and (according to my perception,) into a forbidden field, in pursuit of the ghosts of departed property; and in relieving against fraudulent conveyances and alienations under one section of the statute against frauds, run the hazzard of breaking down another section of the statute, by charging John and Henry Halbert, to answer for the debt of Isaac Halbert, without any promise or assumpsit whatever, known to the law as having been made by them. Fraud depends upon evidence, and all parol evidence, is liable to the danger of perjury and mistake.